IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SIMS GLOBAL SOLUTIONS, LLC,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**SPECIALIZED SHIPPING, LLC, d/b/a/ DGM NEW YORK,**<br><br>    **Defendant.** | Case No. 2:23-CV-2492-JAR-GEB |

**MEMORANDUM AND ORDER**

Plaintiff Sims Global Solutions, LLC brings this action against Defendant Specialized Shipping, LLC, d/b/a/ DGM New York,[1] raising a state law claim for negligent misrepresentation. Plaintiff originally filed suit in Kansas state court, and Defendant removed the action to federal court on the basis of diversity jurisdiction.[2] This matter is before the Court on Defendant's Motion to Dismiss (Doc. 13) under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The motion has been fully briefed, and the Court is prepared to rule. For the reasons described below, the Court grants Defendant's motion.

**I.    Background**

Defendant is an LLC incorporated in New Jersey, with its principal place of business in New Jersey. Plaintiff is an LLC incorporated in Texas, with its principal place of business in Kansas.

---

[1] Plaintiff named Defendant as "DGM New York, LLC" in its Amended Complaint. Doc. 10 at 1. Defendant has since filed an amended Corporate Disclosure Statement, clarifying its name as "Specialized Shipping, LLC, d/b/a/ DGM New York." Doc. 12. Defendant represents that the entity "DGM New York, LLC" does not exist, which Plaintiff does not dispute. The Court therefore directs the Clerk's Office to amend the docket sheet to rename Defendant as "Specialized Shipping, LLC, d/b/a/ DGM New York" before dismissing this action.

[2] Doc. 1.

This suit arises out of a business relationship wherein Defendant stored Aktive disinfectant wipes ("wipes") for Plaintiff between August 2020 and September 2022. Plaintiff paid Defendant storage fees, and in exchange, Defendant agreed to store, inventory, and safeguard the wipes in its warehouses in Eddison, New Jersey. It was understood that Plaintiff would eventually pick up the wipes to deliver to Plaintiff's customers.

On May 17, 2022, Defendant's representative Ramon Atanacio sent Plaintiff an inventory of the total amount of wipes stored in Defendant's warehouses. On June 14, 2022, Plaintiff informed Defendant that 23,000 tubs of wipes were unaccounted for, based on the inventory numbers. The next day, Atanacio stated that Defendant was conducting another inventory "to confirm that nothing was missed."[3] On June 16, 2022, Plaintiff requested prompt, new inventory numbers because "we've got an interested party that we need to get accurate #'s to ASAP."[4] That same day, Atanacio sent an email to Plaintiff's representatives with a new inventory count of all wipes in Defendant's New Jersey facilities. The email represented that Defendant had 36,774 total tubs of wipes, across two warehouses. One of Plaintiff's representatives who was copied on the email was Christopher Woods, Plaintiff's Vice President of Operations. Woods was in Kansas when he received the email. Woods' email signature block contains his office and cell phone numbers with Kansas area codes.

In July 2022, Plaintiff sent trucks to pick up all the wipes and deliver the wipes to Aktive. This delivery was related to a settlement agreement between Plaintiff and Aktive, which provided that Plaintiff had an obligation to deliver all the wipes from the June 16 inventory count to Aktive.

---

[3] Doc. 10 ¶ 9.
[4] *Id.* ¶ 10.

2

When Plaintiff picked up the wipes, it discovered that there were several thousand fewer tubs of wipes than Defendant identified in its June 16 email. Plaintiff notified Defendant of the discrepancy, but Defendant asserted that there were no other wipes in its facilities. Later, on September 12, 2022, Defendant's representative Eric Muller informed Plaintiff that additional wipes were found. Muller provided an inventory count of the additional wipes. On September 15, 2022, Muller confirmed to Plaintiff's representatives that there were no other wipes at Defendant's facilities. Plaintiff sent another truck to pick up the additional wipes. In total, after retrieving all the wipes, there were approximately 7,000 fewer tubs of wipes than Defendant represented in Atanacio's June 16, 2022 inventory count.

Since Plaintiff had entered into agreement with Aktive to deliver all the wipes in the June 16 inventory count, Plaintiff agreed to deliver approximately 7,000 more tubs of wipes than it could actually deliver. Thus, Plaintiff was unable to fulfill its delivery obligations under its settlement agreement, and was required to financially compensate Aktive for the breach.

## II.     Legal Standards

### A.     Pleading Standard

Plaintiff bears the burden of establishing personal jurisdiction over Defendant.[5] In the absence of an evidentiary hearing, as in this case, a plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[6] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[7] Allegations in a complaint are accepted as true if they

---

[5] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[6] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008) (first citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998); and then citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

[7] *Id.* (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091).

are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[8] When a defendant has produced evidence to support a challenge to personal jurisdiction, the plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[9] Courts resolve all factual disputes in favor of the plaintiff.[10] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[11]

### B.     Personal Jurisdiction Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."[12] However, "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause."[13] Thus, "[t]o obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."[14]

---

[8] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007)); *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citing *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)); *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984) (citation omitted).

[9] *Pytlik*, 887 F.2d at 1376 (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947)); *see also Shrader*, 633 F.3d at 1248 (citing *Wenz*, 55 F.3d at 1505).

[10] *Dudnikov*, 514 F.3d at 1070 (citation omitted).

[11] *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citation omitted)).

[12] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed R. Civ. P. 4(k)(1)(A)).

[13] *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 918–19 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[14] *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)); *see also Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) ("The proper inquiry is . . . whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution." (citing *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990))).

"Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," the Court may "proceed directly to the constitutional issue."[15]

Exercising personal jurisdiction over a non-resident defendant is consistent with due process if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[16] A defendant has such minimum contacts with the forum state if "he should reasonably anticipate being haled into court there."[17] The defendant's suit-related conduct itself must create the connection with the forum state; contacts between the plaintiff and the forum, or between the defendant and persons who reside in the forum, are insufficient.[18]

"[A]n out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[19] Here, Plaintiff asserts that the Court has specific jurisdiction over Defendant. To establish a prima facie case of specific jurisdiction, a plaintiff must first show that minimum contacts exist, and then show that those contacts have a sufficient nexus with the forum.[20] Minimum contacts can be demonstrated

---

[15] *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305 (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)); *see Merriman v. Crompton Corp.*, 146 P.3d 162, 179 (Kan. 2006) ("In Kansas, the long arm statute is construed liberally to assert jurisdiction over nonresident defendants to the full extent allowed by the Due Process Clause." (citing *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 834 (Kan. 2002))).

[16] *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[17] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[18] *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." (citation omitted)).

[19] *Old Repub. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (first citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); and then citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)).

[20] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (stating that the defendant's minimum contacts with the state "must show that 'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State,'" and "[t]he litigation must 'result[ ] from alleged injuries that arise out of or relate to those activities.'" (alterations in original) (first quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S.

through either purposeful availment or purposeful direction.[21]  Purposeful availment is established when "the defendant purposefully avail[s] itself of the privilege of conducting activities within the forum State,"[22] such that "it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well."[23]  Alternatively, purposeful direction is established if the defendant took an intentional action that was expressly aimed at the forum state with knowledge that the brunt of the injury would be felt in the forum state.[24]  The requisite nexus exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"[25]  If a plaintiff shows that both prongs of the test are satisfied, the defendant can escape jurisdiction only by showing that the exercise of specific jurisdiction would "offend[ ] 'traditional notions of fair play and substantial justice.'"[26]

## III. Discussion

Defendant asserts that it is not subject to specific personal jurisdiction in Kansas because it did not purposefully create any contacts with Kansas.  Defendant supports its assertion with a sworn declaration from its President, stating that he believed Plaintiff was located in Texas, and

---

102, 109 (1987); and then quoting *Intercon, Inc.*, 205 F.3d at 1247); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (explaining that in the tort context, the court asks whether the nonresident purposefully directed its activities at the forum state).

[21] *See Fireman's Fund Ins. Co.*, 703 F.3d at 493; *Dudnikov*, 514 F.3d at 1071.

[22] *Monge v. RG Petro-Machinery (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004)).

[23] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (first quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984); and then quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)).

[24] *Dudnikov*, 514 F.3d at 1072; *see also Keeton*, 465 U.S. at 773–74 (finding that the defendant's circulation of a magazine in the forum state is sufficient to support specific jurisdiction in a libel action based on the contents of the magazine).

[25] *Daimler AG*, 571 U.S. at 127 (alteration in original) (quoting *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414 n.8).

[26] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 109); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

he primarily dealt with one of Plaintiff's Texas-based employees.[27]  Plaintiff argues that there is personal jurisdiction over Defendant in Kansas because Defendant knew that it was communicating with Plaintiff's representatives in Kansas.  Plaintiff offers the email signature of Woods, containing Kansas phone numbers, as proof that Defendant knew it was reaching out into Kansas.  As described in more detail below, the Court finds that the emails do not support an inference that Defendant had minimum contacts with Kansas based on either purposeful availment or purposeful direction.  The Court need not evaluate nexus because there are no minimum contacts.

Plaintiff needed to show either that Defendant purposefully availed itself of the privilege of doing business in Kansas, or purposefully directed tortious activity at the state.  Both theories of minimum contacts "preclude[] personal jurisdiction as the result of 'random, fortuitous, or attenuated contacts.'"[28]  Courts require defendants' forum-related contacts to be purposeful because defendants should be able "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."[29]  Here, however, the only jurisdictionally relevant contacts between Defendant and Kansas are the tortious emails, which do not support an inference that Defendant's contact with Kansas was purposeful.

Plaintiff alleges no facts to support a finding that Defendant purposefully availed itself of the privilege of doing business in Kansas.  Defendant's declaration submits that its President primarily dealt with one of Plaintiff's employees based in Texas, and that it received an invoice from Plaintiff directing Defendant to send payment to Texas.  Plaintiff did not dispute these facts

---

[27] Doc. 13-1 ¶ 5.

[28] *Bell Helicopter Textron, Inc. v. HeliQwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) (quoting *Burger King Corp.*, 471 U.S. at 475).

[29] *Burger King Corp.*, 471 U.S. at 472 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

or offer contrary evidence, but rather asserted that Defendant clearly knew Woods was in Kansas because of the Kansas phone numbers in his email signature. This assertion is entirely speculative.[30] Woods was not the primary contact for Defendant, so it is uncertain whether Defendant even saw Woods' email signature, let alone whether Defendant recognized the area codes as Kansas phone numbers. Regardless, the email signature does not show that Defendant intentionally reached out to Kansas;[31] all it shows is that one of Plaintiff's representatives happened to be located in Kansas at the time they received the emails. Woods' email signature establishes nothing more than a fortuitous contact between Defendant and the forum.

Additionally, although Plaintiff does not address it, the Court cannot find that Defendant had minimum contacts with Kansas based on purposeful direction, because Plaintiff brings a claim for a negligence-based tort rather than an intentional tort. In the intentional tort context, courts apply the "effects test" derived from *Calder v. Jones*[32] to evaluate whether a defendant purposefully directed its suit-related activities at the forum.[33] In the Tenth Circuit, the effects test is satisfied only where allegations suggest that the defendant intended to cause injury, or cause consequences that the defendant knew would lead to injury, in the forum state.[34] Notably,

---

[30] *See generally Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1076–77 (10th Cir. 2008) (finding the plaintiff's allegation that the defendants knew the location of the plaintiff's business sufficient to survive a motion to dismiss because the allegation did not "rest on conjecture or supposition, but on well-pled and record facts," such as that the plaintiff's location was "clearly disclosed on their eBay auction page" which the defendants undoubtedly viewed). Here, Woods' email signature did not clearly disclose that he was in Kansas, but rather only included phone numbers with Kansas area codes.

[31] In fact, it was Plaintiff who first reached out to Defendant, in New Jersey, to set up the business relationship. *See* Doc. 15 at 3.

[32] 465 U.S. 783 (1984).

[33] *See Dudnikov*, 514 F.3d at 1072 (explaining the essential factors in *Calder*).

[34] *See Old Repub. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017) ("Purposeful direction may also be established . . . when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." (emphasis in original) (citing *Calder*, 465 U.S. at 790–91)); *Speedsportz, LLC v. Menzel Motor Sports, Inc.*, No. 07-CV-624, 2009 WL 2921295, at *9 (N.D. Okla. Sept. 8, 2009) ("[C]ourts have held that Calder's 'effects test' has no application to negligence claims." (citations omitted)).

the Tenth Circuit has not extended the "harmful effects" theory of purposeful direction to cases involving unintentional torts.[35]  By suing for a negligence-based tort, Plaintiff does not allege that Defendant intentionally caused its injury.  This makes it impossible for the Court to infer that Defendant purposefully directed its tortious conduct towards Kansas, knowing that the injury would be felt in the forum.

Since the entirety of Plaintiff's purported basis for jurisdiction is that one of its representatives was located in Kansas, Plaintiff asks the Court to improperly base jurisdiction on the activity of the Plaintiff, rather than the Defendant.  The Court declines to do so.  Plaintiff has failed to plausibly allege that Defendant purposefully created any contacts with Kansas.  Thus, Plaintiff has not alleged facts sufficient for this Court to exercise specific personal jurisdiction over Defendant, and this suit must be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) (Doc. 13) is **granted**.  This suit is hereby dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT** that the Clerk's Office is directed to amend the docket sheet to name Defendant as "Specialized Shipping, LLC, d/b/a/ DGM New York."

**IT IS SO ORDERED.**

Dated: March 18, 2024

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  UNITED STATES DISTRICT JUDGE

---

[35] *See Old Repub. Ins. Co.,* 877 F.3d at 916 n.34.; *see also Calder*, 465 U.S. at 789 (drawing a distinction between intentional and unintentional torts by noting that "petitioners are not charged with mere untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were expressly aimed at California.").